UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NVARD SRABYAN, A.V., a minor, by his parent and guardian ad litem, NVARD SRABYAN, and M.V., a minor, by her parent and guardian ad litem, NVARD SRABYAN, individually and on behalf of all others similarly situated,

      Plaintiffs,

  -against-

THE STATE OF NEW YORK, NEW YORK STATE EDUCATION DEPARTMENT, ANDREW CUOMO, in his personal capacity and official capacity as Governor of the State of New York, SHANNON TAHOE, in her personal capacity and official capacity as Interim Commissioner of Education for the State of New York, BILL DE BLASIO, in his personal capacity and official capacity as Mayor of New York City, THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF EDUCATION, and RICHARD CARRANZA, in his personal capacity and official capacity as Chancellor of the New York City Department of Education,

      Defendants.

**MEMORANDUM & ORDER**
**20-CV-3137 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs are two New York City public school students, A.V. and M.V., and their mother, Nvard Srabyan. Together they bring this putative class action following a series of Executive Orders issued by then-Governor Andrew Cuomo in response to the COVID-19 pandemic that directed every school in New York State to close its doors and shift to remote learning for the remainder of the

1

2019-2020 school year. According to Plaintiffs, these Orders, and the blended learning plans for the 2020-2021 school year, represent "an attack on our liberties [and] unalienable . . . rights for all students to have an equal opportunity to receive education," and "can be construed as an attempt to subvert our democratic government and move this nation a step closer towards totalitarianism." (Am. Compl. (Dkt. 27) ¶ 4.)

Plaintiffs' 70-page, 264-paragraph amended complaint begins with a quote from Lewis Carroll's *Alice's Adventures in Wonderland*. An apt reference, because by the end, one feels as if they've gone through the looking glass. They allege the Executive Orders violated some 19 federal and state constitutional rights. Under the U.S. Constitution, they allege that Defendants violated the Commerce Clause; Contracts Clause; Republican Guarantee Clause; prohibition on Bills of Attainder and Ex Post Facto laws; the Fifth Amendment's Takings Clause; the Sixth, Seventh, Ninth, Tenth, and Thirteenth Amendments; and the Fourteenth Amendment's Procedural Due Process, Substantive Due Process, Equal Protection, and Privileges and Immunities Clauses. (*Id.* ¶¶ 122-220, 258-64.) For good measure, they tack on several alleged violations of the New York State Constitution. (*Id.* ¶¶ 221-48.) They seek declaratory and injunctive relief, as well as a general request for unspecified damages. (*Id.* at 69.)

Defendants move to dismiss the complaint on a host of grounds pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See* State's Mot. to Dismiss (Dkt. 39); City's Mot. to Dismiss (Dkt. 45).) The court now grants their motions and dismisses the amended complaint for the following reasons.

I.   **PLAINTIFFS ABANDONED MOST OF THEIR CLAIMS**

Defendants moved to dismiss each alleged cause of action for failure to state a claim. Plaintiffs respond to only three of those arguments and have, therefore, abandoned the unaddressed

causes of action.[1] *See McLeod v. Verizon N.Y.*, Inc., 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) ("[A] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims."); *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018).[2] Thus, all but three of the original 19 causes of action are dismissed. The remaining claims are for alleged violations under the Equal Protection Clause, the Commerce Clause, and the Contracts Clause.

## II. PLAINTIFFS' REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF IS MOOT

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Here, New York (City and State) has reopened its schools; Governor Cuomo rescinded the declaration of a disaster emergency and the challenged Executive Orders, *see* N.Y. Exec. Order No. 210, N.Y. Comp. Codes R. & Regs. tit. 9, § 8.210 (2021); and the New York Legislature curtailed the Governor's emergency powers to reissue COVID-19 restrictions, *see* 2021 N.Y. Sess. Laws ch. 71 § 4. In light of these developments, the Second Circuit in a series of summary orders has held that similar challenges to previous COVID-19-related Executive Orders were moot. *See Nat'l Rifle Ass'n of Am. v. Hochul*, No. 20-3187-CV, 2021 WL 5313713, at *1 (2d Cir. Nov. 16, 2021); *Dark Storm Indus. LLC v. Hochul*, No. 20-2725-CV, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021); *36 Apartment Assocs., LLC v. Cuomo*, 860 F. App'x

---

[1] As the State points out, Plaintiffs appear to have explicitly abandoned these unaddressed claims. (*See* Pls.' Opp'n (Dkt. 41) at 21) ("[I]t is respectfully submitted that plaintiffs are indeed entitled to proceed on their Equal Protection, Commerce Clause and Contract Clause claims.").)

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

215, 216-17 (2d Cir. 2021); *see also Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021). So too have several district courts in the school-closure context. *See, e.g.*, *Lebovits v. Cuomo*, No. 20-CV-1284 (GLS) (DJS), 2022 WL 344269, at *3 (N.D.N.Y. Feb. 4, 2022); *Lewis v. Cuomo*, No. 20-CV-6316 (CJS), 2021 WL 3163238, at *7-8 (W.D.N.Y. July 27, 2021); *Aviles v. Blasio*, No. 20-CV-9829 (PGG), 2021 WL 796033, at *16-17 (S.D.N.Y. Mar. 2, 2021). This court now follows suit and dismisses Plaintiffs' claims for declaratory and injunctive relief as moot.

Because Plaintiffs also seek damages, however, their remaining claims survive. *See Dean v. Blumenthal*, 577 F.3d 60, 66 & n.3 (2d Cir. 2009). Barely. *See Tawwab v. Metz*, 554 F.2d 22, 24 n.4 (2d Cir. 1977) (holding that the complaint was moot despite "a general demand for damages," because "[a]ny award of damages on the facts of this case, as alleged in the complaint, would be so remote and speculative that it could not stand").

### III. PLAINTIFFS LACK STANDING

The remaining claims for damages are dismissed because Plaintiffs lack standing to assert them.

#### A. Legal Standard

"The law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). It "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 484 (1982).

To establish standing, the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct

of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). A "particularized" injury "affect[s] the plaintiff in a personal and individual way." *Id.* "A 'concrete' injury must be '*de facto*'; that is, it must actually exist"; it must be "real," and not "abstract." *Id.* at 340.

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements," and, "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Id.* at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Id.* at 338 n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

### B. Application

Plaintiffs fail to establish injury in fact, "the first and foremost of standing's three elements," because the alleged injuries are neither particularized nor concrete. *See id.* at 338. Plaintiffs allege that A.V. and M.V. go to public school, and Srabyan is their mother. (*See* Am. Compl. ¶¶ 33-35.) That's it. Rather than plead facts to satisfy the standing elements and demonstrate how Defendants injured them personally, Plaintiffs use their 70-page *amended* complaint to grumble about the state of the nation's political discourse, the New York City Department of Education's curricula, and how they perceive the Executive Orders affect "parents" and "students" generally.

5

In searching for clues as to just what injuries Plaintiffs seek to allege in their freewheeling complaint, the court turns to their memorandum in opposition to Defendants' motions to dismiss, in which they summarize the "main issue[s]" as (1) "whether the defendants . . . have created an environment of 'separate but equal' education," which "discriminates against minorities and those of lesser financial means"; (2) "the need for relief . . . to the extent that defendants . . . have interfered with interstate commerce"; and (3) "the need for relief . . . as a result of the fact that the State of New York is currently a dictatorship." (Pls.' Opp'n at 1-2.) They further contend that even though the Executive Orders have been rescinded and schools reopened, "the harm has already been done," because blended learning plans also "fail[] to prepare students to exercise meaningfully their Fifteenth Amendment right to vote, their First Amendment rights to speak, to petition their governments and to participate in democratic processes, and their Sixth and Seventh Amendment rights to serve on a jury and be judged by a jury of their peers." (*Id.*)

Based on Plaintiffs' amended complaint and opposition papers, the court can glean three possible injuries: two to the students, A.V. and M.V., and one to their mother, Srabyan. None of which satisfy Article III standing.

1. A.V. and M.V. Lack Standing

The two possible injuries to A.V. and M.V. are (1) a "separate but equal" learning environment that discriminates against minorities and those of lesser financial means; and (2) a failure to prepare them to exercise various constitutional rights. The first fails on particularity; the second on concreteness.

To support the first possible injury, that the Executive Orders and subsequent blended learning plan discriminate against minorities and those of lesser means, Plaintiffs allege:

6

> Plaintiffs and the Class have been deprived of their rights to, *inter alia*, equal treatment regardless of their race, ethnic background, religion, or sex, financial background, citizenship status, and have been deprived of right to educational services to students without disabilities but in need of extra assistance, educational services to students with disabilities, and fair and equal administration of: a) student treatment; b) student services; c) counseling and guidance; d) discipline; e) classroom assignment; f) grading; g) vocational education; h) recreation; i) physical education; and j) athletics.

(Am. Compl. ¶ 12.) But the complaint says nothing about *Plaintiffs'* race, background, religion, citizenship, or financial status. It says only that they are English Language Learners, and even that is only half-right: A.V. is (for now), but M.V. is not (she tested out in 2017 and took an Advanced Placement course in English Language in Composition in the 2019-2020 school year). (*See* Decl. of Henry Chou in Supp. of City's Mot. to Dismiss ("Chou Decl.") (Dkt. 46) ¶¶ 5-8.) Accordingly, this alleged "separate but equal" injury is not particularized as to Plaintiffs, because it fails to allege how the Executive Orders or blended learning plans "affect the[m] . . . in a personal and individual way." *See Spokeo, Inc.*, 578 U.S. at 339.

To support the second possible injury, that the blended learning plan fails to prepare students to exercise various constitutional rights, Plaintiffs allege in essence that this plan fails to provide A.V. and M.V. with an adequate education. (*See, e.g.*, Am. Compl. ¶ 20 ("[Defendants] have failed to provide an adequate plan for the named Plaintiffs and tens of thousands of other students in the City and State of New York for an education that is adequate to prepare them to function productively as civic participants . . . ."); *id.* ¶ 96 ("Students with special education needs and/or need for extra assistance including Plaintiffs and the Class, and who

7

attend schools in the New York Public School system do not receive adequate instruction in history, American government and civics or adequate extracurricular experiences geared to their special learning needs that will prepare them to function productively as civic participants as adults.").) There is little more to say about this alleged injury other than it fails to satisfy the concreteness prong, because it fails to allege an injury that actually exists, that is real, and not abstract. *See Spokeo, Inc.*, 578 U.S. at 340. Put simply, Plaintiffs' displeasure with the New York City Public Schools curricula is not a concrete injury arising out of remote learning that satisfies Article III standing.³

　　　　2.　Srabyan Lacks Standing

The alleged injury as to Srabyan involves some vague economic harm to parents who must stay home to supervise their children's remote learning. Vague, because the complaint says nothing about any hardship, harm, or annoyance that Srabyan experienced as a result of remote or blended learning. Plaintiffs fail even to allege that Srabyan herself stayed home to supervise A.V. and M.V. Rather, the complaint refers to effects on "parents" generally and ignores any effect on Srabyan personally. (*See, e.g.*, Am. Compl. ¶¶ 13, 27-28, 110, 181.) Thus, this alleged injury is not particularized as to Plaintiffs, and they lack standing to bring a claim based on it.

---

³ Raising further doubt as to whether Plaintiffs are appropriately adverse parties to bring this suit, when given the option of remote learning or blended learning to begin the 2020-2021 school year, Srabyan elected to have M.V. receive 100% remote learning and A.V. receive blended learning. (*See* Chou Decl. ¶ 10.) *See Harty v. W. Point Realty, Inc.*, No. 20-2672-CV, 2022 WL 815685, at *2 (2d Cir. Mar. 18, 2022) ("[A] Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial, *i.e.*, based solely on the allegations of the complaint and exhibits attached to it, or fact-based, *i.e.*, based on evidence beyond the pleadings.").

### IV. PLAINTIFFS FAIL TO STATE A CLAIM

Even if Plaintiffs alleged facts sufficient to demonstrate Article III standing, their complaint would still fail. The court disposes of the three remaining claims pursuant to Defendants' motions to dismiss for a failure to state a claim under Rule 12(b)(6).[4]

First, the Commerce Clause claim fails because Plaintiffs do not come close to adequately pleading that the Executive Orders "interfered with the natural functioning of the interstate market either through prohibition or through burdensome regulation." *McBurney v. Young*, 569 U.S. 221, 235 (2013); *see Alliance of Auto. Mfrs., Inc. v. Currey*, 610 F. App'x 10, 12 (2d Cir. 2015) ("State legislation runs afoul of the negative command of the Commerce Clause only where it: '(1) clearly discriminates against interstate commerce in favor of intrastate commerce, (2) imposes a burden on interstate commerce incommensurate with the local benefits secured, or (3) has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question.'" (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 90 (2d Cir. 2009))).

Second, the Contracts Clause claim fails for the simple reason that Plaintiffs fail to "identify[] the precise contractual right that has been impaired." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504 (1987). Indeed, Plaintiffs identify no personally held contract whatsoever. *See All. of Auto. Mfrs., Inc.*, 610 F. App'x at 13 ("To state a claim for violation of the Contracts Clause, a complaint must allege sufficient facts to demonstrate that a state law has 'operated as a substantial impairment of a contractual relationship.'" (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992))).

---

[4] Plaintiffs' complaint also runs afoul of Federal Rule Civil Procedure 8, offering yet another avenue for dismissal. (*See* State's Mot. to Dismiss at 12-14; City's Mot. to Dismiss at 12-14; State's Reply (Dkt. 42) at 5-6.)

Third, and finally, the Equal Protection Clause claim fails because, as discussed, Plaintiffs allege neither that they are part of an identifiable or suspect class, nor that they are treated differently than any other similarly situated New Yorkers. Even if they did, it is clear that the best Plaintiffs could hope for is rational basis review of the Executive Orders; a hurdle that these Orders—issued in response to the COVID-19 pandemic—easily clear. Accordingly, Plaintiffs' claims, even if they satisfied Article III standing, would be dismissed under Rule 12(b)(6) for failure to state a claim.

## V.   CONCLUSION

Defendants' [39] [44] motions to dismiss are GRANTED, and Plaintiffs' [27] Amended Complaint is DISMISSED with prejudice. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated:   Brooklyn, New York
         March 23, 2022

                                         /s/ Nicholas G. Garaufis
                                         NICHOLAS G. GARAUFIS
                                         United States District Judge